# UNITED STATES DISTRICT COURT

## SOUTHERN  District of  NEW YORK

MICHAEL TEASLEY,

        Plaintiff(s),

  - against -

PFIZER LONG TERM DISABILITY PLAN,
PFIZER MEDICAL PLAN, PFIZER DENTAL PLAN
PFIZER LIFE INSURANCE PLAN, PFIZER PFLEX
PLAN, INA LIFE INSURANCE COMPANY
OF NEW YORK and METROPOLITAN LIFE
INSURANCE COMPANY,

        Defendant(s).

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

# 05 CV 10766

# JUDGE STEIN

TO: (name and address of defendants)

    See Attached Sheet

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

        BINDER & BINDER, P.C.
        2805 Veterans Memorial Highway
        Suite 20
        Ronkonkoma, New York 11779

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

CLERK

_Marcos Quintero_

(BY) DEPUTY CLERK

DATE  DEC 2 3 2005



NAMES AND ADDRESSES OF DEFENDANTS -

**PFIZER LONG TERM DISABILITY PLAN**
**C/O PFIZER, INC.**
**235 EAST 42ND STREET**
**NEW YORK, NY  10017**                    County of New York

**PFIZER MEDICAL PLAN**
**C/O PFIZER, INC.**
**235 EAST 42ND STREET**
**NEW YORK, NY  10017**                    County of New York

**PFIZER DENTAL PLAN**
**C/O PFIZER, INC.**
**235 EAST 42ND STREET**
**NEW YORK, NY  10017**                    County of New York

**PFIZER LIFE INSURANCE PLAN**
**C/O PFIZER, INC.**
**235 EAST 42ND STREET**
**NEW YORK, NY  10017**                    County of New York

**PFIZER PFLEX PLAN,**
**C/O PFIZER, INC.**
**235 EAST 42ND STREET**
**NEW YORK, NY  10017**                    County of New York

**INA LIFE INSURANCE COMPANY OF NEW YORK**
**195 BROADWAY**
**NEW YORK, NY 10007**                     County of New York

**METROPOLITAN LIFE INSURANCE COMPANY**
1 Madison Avenue
New York, New York   10010                 County of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

MICHAEL TEASLEY,                          :
                                          :
                    Plaintiff,            :          Civil
                                          :          Action No.:
         – against –                      :
                                          :          COMPLAINT
PFIZER  LONG TERM DISABILITY PLAN,        :
PFIZER  MEDICAL PLAN, PFIZER DENTAL PLAN  :
PFIZER LIFE INSURANCE PLAN, PFIZER PFLEX  :
PLAN, INA LIFE INSURANCE COMPANY          :
OF NEW YORK and METROPOLITAN LIFE         :
INSURANCE COMPANY,                        :
                                          :
                    Defendants.           :

------------------------------------------------------X


         Plaintiff, Michael Teasley, by his attorneys, BINDER & BINDER, P.C., for his Complaint

against the Defendants, Pfizer Long Term Disability Plan (the "LTD Plan"), Pfizer Medical Plan

(the "Medical Plan"), Pfizer Dental Plan (the "Dental Plan"), Pfizer Life Insurance Plan (the

"Life Insurance Plan"), Pfizer Pflex Plan (the "Pflex Plan"), INA Life Insurance Company of

New York ("INA") and Metropolitan Life Insurance Company ("Met Life"), hereby alleges as

follows:


### JURISDICTION AND VENUE

         1.       Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f),

which give the District Courts jurisdiction to hear civil actions brought to recover benefits due

under the terms of an employee welfare benefit plan.  In addition, this action may be brought

before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.      Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001, *et seq.*), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits.  Plaintiff has exhausted all administrative avenues of appeal and has received a final denial.  Therefore, this matter is properly before this court for *de novo* judicial review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

3.      Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

4.      Venue is proper in the Southern District of New York because both the administration of the Plan and the breach took place in New York City.

## NATURE OF ACTION

5.      This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6.      The LTD Plan provides long term disability benefits to employees of Pfizer Inc. ("Pfizer").  As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action.  Said benefits were effective at all times relevant hereto.

7.      Claims for benefits are administered and paid through a Group Insurance Policy,

No. NYK 002279 ("the policy") issued by Defendant, INA.  Defendant, INA, through its parent company, CIGNA Group Insurance ("CIGNA"), has made all of the claims decisions in this matter.

8.       This is also a claim seeking a declaration that Plaintiff is entitled to benefits, in the form of continuation of coverage, under the terms and conditions of the other Pfizer employee welfare benefit plans, including the Medical Plan, the Dental Plan, the Life Insurance Plan and the Pflex Plan, as a result of his disability.

## THE PARTIES

9.       Plaintiff was born on October 8, 1957, is presently 48 years old, and is a resident of Miami, Florida.

10.      Defendant, the LTD Plan, is an employee welfare benefit plan, as defined by ERISA.  Pfizer is the named Plan Administrator of the LTD Plan, and upon information and belief, the agent for service of process, with a home office located at 235 East 42nd Street, New York, New York 10017.

11.      Defendant, the Medical Plan, is an employee welfare benefit plan, as defined by ERISA.  Upon information and belief, Pfizer is the named Plan Administrator of the Medical Plan, and the agent for service of process, with a home office located at 235 East 42nd Street, New York, New York 10017.

12.      Defendant, the Dental Plan, is an employee welfare benefit plan, as defined by ERISA.  Upon information and belief, Pfizer is the named Plan Administrator of the Dental Plan, and the agent for service of process, with a home office located at 235 East 42nd Street, New

York, New York 10017.

13.     Defendant, the Life Insurance Plan, is an employee welfare benefit plan, as defined by ERISA.  Upon information and belief, Pfizer is the named Plan Administrator of the Life Insurance Plan, and the agent for service of process, with a home office located at 235 East 42nd Street, New York, New York 10017.

14.     Defendant, the Pflex Plan, is an employee benefit welfare plan, as defined by ERISA.  Upon information and belief, Pfizer is the named Plan Administrator of the Pflex Plan, and the agent for service of process, with a home office located at 235 East 42nd Street, New York, New York 10017.

15.     Defendant, INA, is an incorporated insurance company licensed to conduct the business of insurance in New York.  Upon information and belief, INA, through its parent company, CIGNA, is the named Claims Administrator for the LTD Plan.  INA's address is 195 Broadway, New York, New York 10007.

16.     Defendant, Met Life, is an incorporated insurance company licensed to conduct the business of insurance in New York.  Upon information and belief, Met Life is the named Claims Administrator for continued life insurance coverage in excess of any Pfizer provided coverage.  Met Life's address is 1 Madison Avenue, New York, New York 10010

## STATEMENT OF FACTS

Plaintiff's Occupation:

17.     Plaintiff became an employee of Pfizer in 1983.  Plaintiff continued working for Pfizer through May 14, 1999.

18.     By virtue of his employment with Pfizer, Plaintiff was a covered participant in the LTD Plan.

19.     Prior to and including May 14, 1999, Plaintiff was employed by Pfizer as a Compounding Supervisor.  In this capacity, Plaintiff was responsible for supervising activities of the compounding department to meet weekly schedules; supervising the receipt, storage and handling of all raw material chemicals; reporting accurate chemical usage and documenting all procedures; preparing batch procedures and SOPs for compounding department; ensuring and providing proper training to personnel to comply with regulations; preparing department budget and monitoring operations with budget parameters; coordinating all scheduled and emergency repairs with the maintenance department; and preparing employee performance evaluations and communicating meaningful feedback, appropriate coaching and development of employees.

20.     Plaintiff's pre-disability income was approximately $56,100 per year.

21.     For the period beginning prior to May 14, 1999, and at all relevant times hereto, Plaintiff, together with other regular employees of Pfizer, was a covered participant under the LTD Plan.


The Terms of the LTD Plan:

22.     The LTD Plan issued by INA provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability.

23.     Immediately prior to the onset of his disability, Plaintiff was an active employee working a minimum of 20 hours per week, and as such, Plaintiff falls under Class 1 of the

Classes of Eligible Employees covered by the LTD Plan.

24.     The monthly benefit is determined based on a set percentage (70%) of the employee's monthly Covered Earnings rounded to the nearest dollar, or $4,200, whichever is less. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

25.     In Plaintiff's case, the Plan provides for a benefit of approximately $3,272.50 per month, less the amount of "Other Income Benefits" as defined by the LTD Plan.

26.     According to the LTD Plan, Long Term Disability benefits are to commence after the "Benefit Waiting Period", which is the latest of the following: 180 days; the expiration of the Salary Continuance Plan provided by the Employer on behalf of the Employee; or the date the Employer sponsored one-half pay plan takes effect for the Employee.

27.     In the instant matter, Plaintiff's Long Term Disability benefits should have commenced around November 14, 1999.

28.     The maximum benefit period under the LTD Plan extends to the claimant's 65th birthday, provided the period of total disability begins prior to age 59, which is the case herein.

29.     The LTD Plan defines "disability" as follows:

> *An Employee is Disabled if, because of Injury or Sickness,*
> *1.     He or she is unable to perform all the material duties of his or her regular occupation; and*
> *2.     After Monthly Benefits have been payable for 24 months, he or she is unable to perform all the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience.*

30.     The LTD Plan further requires a claimant to be under the care of a physician, and to provide continued proof of his disability, at his own expense, in order for benefits to continue.

Plaintiff's Disability:

31.     Plaintiff was forced to stop working on May 14, 1999, due to his severe medical

conditions, including Chronic Tension-Type Headaches, Migraine Headaches, Chronic

Lumbalgia with Spondylolisthesis and Osteoarthritis, Chronic Cervicalgia, Fibromyalgia,

Depression, Anxiety Disorder, Obstructive Sleep Apnea, Periodic Limb Movements, Chronic

Fatigue and Immune Deficiency Syndrome and Gastroesophageal Reflux Disease.

32.     Plaintiff was diagnosed with the above medical conditions by his various treating

physicians.

33.     Among these was Plaintiff's treating Neurologist, Steve D. Wheeler, M.D., who is

Board Certified by the American Board of Psychiatry and Neurology.  In a report dated March

14, 2001, Dr. Wheeler noted, among other things, that a sleep study conducted on September 25,

1997 revealed obstructive sleep apnea, a cervical MRI showed slight uncovertebral spurring on

the right at C4-C5, an MRI of the lumbar spine showed degenerative disc disease at L4-L5 and

L5-S1, and physical examinations show severe widespread fibromyalgic tender points,

drowsiness and slight slurred speech.  Dr. Wheeler further stated that no treatment regimen has

been successful.

34.     Dr. Wheeler further stated:

> He is rarely able to life and carry more than 10 pounds, but can
> occasionally handle 5-10 pounds.  He has limited use of arms due
> to severe pain.  He is unable to bend, stoop, twist, climb, kneel,
> push or pull objects.  He spends the majority of each day in the bed
> or chair recumbent or near recumbent.

35.     Dr. Wheeler opined that Mr. Teasley's:

> [P]rognosis for meaningful recovery is quite poor.  He is unable to

perform the essential duties of his most recent job or any occupation. He is totally disabled due to his multitude of medical problems with multiple chronic pain syndromes, multiple sleep disorders and depression and anxiety escalating in a vicious cycle. Poor quality sleep increases the fatigue and worsens the pain and worsens the depression and anxiety. Stress worsens the pain, depression and anxiety. Pain worsens the depression and anxiety, results in increased inactivity and worsens the fatigue. Pain worsens the sleep, etc.... He has been totally disabled by his present problems since 5/14/99. ...

36.     Dr. Wheeler's records further reflect that Plaintiff used DHE-45.[1]  In fact, Plaintiff was admitted to Baptist Hospital on September 25, 2000 for aggressive treatment with repetitive intravenous DHE-45 as a result of a "marked increase in his functional disability."

37.     Mr. Teasley's treating internist, Marco Vitiello, M.D., who is Board Certified in both Emergency Medicine and Internal Medicine, has also diagnosed Mr. Teasley with Fibromyalgia, Chronic Fatigue, and Immune Deficiency Syndrome.  Dr. Vitiello also determined that Plaintiff cannot perform his previous occupation, stating that Plaintiff can sit for two hours, stand for two hours, and walk for two hours in an eight-hour workday.  This low level of functionality would essentially preclude even sedentary work, which requires the ability to sit for at least 6 hours per day.

38.     Plaintiff was also treated by Pain Management Specialist, Osmin A. Morales, M.D., who administered multiple trigger point injections in Plaintiff's shoulders and started Plaintiff on a prescription of Celexa.  The trigger point injections were unsuccessful in

---

[1]The National Headache Foundation website states that DHE-45 "is useful in the acute treatment of migraine and other vascular headaches such as cluster headache." http://www.headaches.org/consumer/topicsheets/DHE_45.html.

alleviating Mr. Teasley's shoulder pain.

39.     Plaintiff has received, and continues to receive, medical treatment for his

numerous medical conditions from his primary care physician and various appropriate specialists.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR
### LONG-TERM DISABILITY BENEFITS

40.     With regard to Plaintiffs claims for benefits under the LTD Plan, he continued to

work through May 14, 1999.

41.     On or about May 14, 1999, Plaintiff was forced to stop working because of

Chronic Tension-Type Headaches, Migraine Headaches, Chronic Lumbalgia with

Spondylolisthesis and Osteoarthritis, Chronic Cervicalgia, Fibromyalgia, Depression, Anxiety

Disorder, Obstructive Sleep Apnea, Periodic Limb Movements, Chronic Fatigue and Immune

Deficiency Syndrome and Gastroesophageal Reflux Disease.

42.     Due to Plaintiff's cessation of work, as a direct result of these medical conditions

he was  rendered totally disabled within the definition of the LTD Plan's description.

43.     In compliance with the terms and conditions of the LTD Plan, Plaintiff timely

applied for long-term disability insurance benefits.

44.     By letter dated December 22, 1999, CIGNA notified Plaintiff that it was denying

Plaintiff's claim, stating that his medical conditions were not severe enough to meet the

definition of disability under the LTD Plan.

45.     According to CIGNA, it denied Plaintiff benefits, in part, because the medical

records indicated that Mr. Teasley had been working with his conditions since 1996.  This excuse

was used despite the fact that Plaintiff's treating neurologist, Dr. Wheeler stated that Plaintiff

was unable to work due to a deterioration of his Fibromyalgia, Chronic Fatigue Syndrome and

pain symptoms.

46.     By letter dated February 18, 2000, Plaintiff appealed CIGNA's December 22,
1999 adverse decision.

47.     On June 19, 2000, Plaintiff, without the aid of counsel, submitted additional
medical documentation and other materials with his appeal.

48.     After not hearing from CIGNA, regarding his appeal, on or about December 11,
2000, Plaintiff contacted Binder & Binder, P.C. to obtain assistance in his appeal efforts.

49.     Plaintiff retained Binder & Binder, P.C. to represent him with regard to his LTD
claim on or about December 19, 2000.

50.     By letter dated December 19, 2000 (prior to its receipt of CIGNA's second denial
letter), Plaintiff's counsel formally requested an administrative appeal of CIGNA's adverse
decision and requested a copy of CIGNA's entire claim file.

51.     By letter dated December 21, 2000, CIGNA issued its appeals denial of Plaintiff's
claim for Long Term Disability benefits.  CIGNA based this decision, in part, on a review of
Plaintiff's file performed by CIGNA's own Physician Advisor, Dr. Daniel Nackley.

52.     Dr. Nackley reviewed Plaintiff's case at CIGNA's request.  He never examined
Plaintiff.  Further, it appears that Dr. Nackley is either an employee or a consultant of CIGNA,
that he is paid directly by CIGNA, and that he is not "independent."

53.     Despite the specific provision in the LTD Plan allowing CIGNA to have Plaintiff
examined, CIGNA chose not to do so – just as it had one on the initial appeal.

54.    By letter dated January 11, 2001, CIGNA acknowledged that they would review Binder & Binder P.C.'s appeal on Plaintiff's behalf.

55.    Plaintiff's counsel, by letter dated June 20, 2001, provided comments regarding CIGNA's December 22, 1999, and December 21, 2000,  denial letters and submitted additional medical records for CIGNA's review.

56.    By letter dated April 25, 2002, Plaintiff's counsel noted that it had been ten (10) months since Mr. Teasley's appeal had been submitted.

57.    By letter dated September 17, 2002, Plaintiff's counsel had to re-submit the June 20, 2001 appeal letter, along with the additional medical records, as CIGNA claimed that it never received said letter and records.

58.    The June 20, 2001, letter with the accompanying additional medical documentation was sent via Certified Mail – Return Receipt Requested.  The signed Return Receipt slip was received by Plaintiff's counsel evidencing the fact that CIGNA had received the original letter and medical records.

59.    By letter dated September 26, 2002, CIGNA notified Plaintiff's counsel that it had received the additional medical records, and that it would be reviewing Plaintiff's appeal.

60.    Through a telephone conversation on October 10, 2002, CIGNA requested that Plaintiff's counsel provide a copy of Mr. Teasley's claim file for CIGNA's review because they had lost it.  Plaintiff's counsel promptly forwarded the appropriate documents to CIGNA.

61.    By letter dated November 13, 2002, CIGNA noted that they were reviewing Plaintiff's claim and the additional medical information, and that they hoped to make a decision within thirty (30) days.  Further, CIGNA stated that, if additional time was needed, it would

notify Plaintiff's counsel of the reason for the delay.

62.    This time, dated January 8, 2003, CIGNA sent the exact same letter to Plaintiff's counsel. No reason was given for the delay. CIGNA's letter again stated that it hoped to make a decision on Plaintiff's appeal within thirty (30) days.

63.    Finally, by letter dated February 5, 2003, CIGNA issued its final denial of Plaintiff's LTD claim.

64.    CIGNA's letter advised that the decision was based, in part, on a review of Plaintiff's file performed by CIGNA's own Nurse Case Manager and Associate Medical Director. These individuals were not identified in the letter. CIGNA concluded that the medical information submitted by Plaintiff did not support how Mr. Teasley's condition had changed, from 1996, when Plaintiff was still working, in such a way that would have prevented him from performing his occupation after May 14, 1999.

65.    This determination is in direct contradiction of the opinions of Plaintiff's treating physicians, that there has been an overall worsening in Plaintiff's condition over the years since his conditions first manifested.

66.    The Nurse Case Manager and Associate Medical Director, presumably employed by CIGNA, never actually examined Plaintiff. Further, the identity of these consultants was kept secret, which is in direct violation of ERISA and its regulations.

67.    Just as it had done prior to issuing its initial denial, CIGNA chose to forego its right to have plaintiff examined during the appeal. As a result, the only evidence that is scientifically and medically acceptable to establish disability, has been provided by Mr. Teasley's treating doctors – all of whom found he was totally disabled.

68.     Plaintiff applied for and was awarded Social Security Disability Benefits. Plaintiff's Notice of Award from SSA is dated October 27, 2001. Plaintiff was found to be disabled under the Social Security Act with an onset date of May 14, 1999.

69.     The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Plan. According to 20 C.F.R. §404.1505:

> a) The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience.

70.     CIGNA failed to reconcile the conclusion of the Social Security Administration, that Mr. Teasley was totally disabled, with CIGNA's conclusion that he was not totally disabled -- under a far less stringent definition of disability.

71.     In addition, CIGNA receives a financial benefit from the Social Security Disability award. CIGNA is allowed to reduce any disability benefits payable under the LTD Plan by the amount of "Other Income Benefits" received. Among the "Other Income Benefits" are Social Security Disability benefits.

72.     In seeking to further its own pecuniary interest, CIGNA has denied Plaintiff of his right to a full and fair review of the denial of his claim, as required by ERISA.

73.     CIGNA, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Mr. Teasley.

74.     The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Mr. Teasley and other Plan participants.

75.     The LTD Plan's fiduciary duty requires that it, through the Plan Administrator, select an insurer/claims administrator who will: administer claim in accordance with Plan terms; fairly and objectively apply Plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

76.     By allowing CIGNA to mishandle Plaintiff's claim as it did, the LTD Plan failed in its fiduciary duty to Mr. Teasley.

77.     As such, the LTD Plan failed to adequately monitor, control and correct CIGNA's improper actions.

78.     Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

79.     The adverse claim decisions rendered in the instant action have been made by CIGNA, which has a pecuniary interest in denying claims.

80.     Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

81.     CIGNA's decisions were not supported by the medical evidence.

82.     CIGNA's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

83.     Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to the receipt of Long-Term Disability benefits retroactive to

May 14, 1999, and continuing to the present under the LTD Plan.

## PLAINTIFF'S SECOND CAUSE OF ACTION FOR
## COVERAGE UNDER THE PFIZER MEDICAL PLAN

84.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "83," as if fully set forth herein.

85.     The Pfizer Pflex Plan Summary Plan Description (SPD) Booklet states that if you have five (5) or more years of "Creditable Service", you may:

- *continue medical coverage under COBRA (Package 1), or*

- *waive your COBRA rights (Package 2), and enroll in the Pfizer Medical Plan – Medical Plus option (or a managed care plan offered through Pfizer, if available to you based on your residential zip code). Pfizer pays the full cost of coverage, and coverage will continue for as long as you remain totally and permanently disabled under the terms of the Pfizer LTD Plan.*

86.     Plaintiff was hired to work at Pfizer on April 25, 1983.

87.     Plaintiff's last day worked as a result of the onset of his total disability was May 14, 1999.

88.      Accordingly, Plaintiff has accumulated more than five (5) years of "Creditable Service."

89.     As detailed above, Plaintiff is entitled to a ruling by this Court that he is totally and permanently disabled within the terms of the LTD Plan.

90.     Accordingly, Plaintiff is entitled to have Pfizer pay the full cost of his medical coverage, for as long as Plaintiff remains totally and permanently disabled.

91.     Further, upon information and belief, the Pfizer Medical Plan provides additional

benefits, for which Mr. Teasley may be qualified as a result of his disability.

### PLAINTIFF'S THIRD CAUSE OF ACTION FOR COVERAGE UNDER THE PFIZER DENTAL PLAN

92.     Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number

"1" through "91," as if fully set forth herein.

93.     The Pfizer Pflex Plan Summary Plan Description (SPD) Booklet states that if you

have five (5) or more years of "Creditable Service," you may:

- *continue dental coverage under COBRA (Package 1), or*

- *waive your COBRA rights (Package 2), and enroll in the Pfizer Dental Plan – Standard Dental option. Pfizer pays the full cost of coverage, and coverage will continue for as long as you remain totally and permanently disabled under the terms of the Pfizer LTD Plan.*

94.     Plaintiff was hired to work at Pfizer on April 25, 1983.

95.     Plaintiff's last day worked as a result of the onset of his total disability was May

14, 1999.

96.     Accordingly, Mr. Teasley has accumulated more than five (5) years of

"Creditable Service."

97.     As detailed above, Plaintiff is entitled to a ruling by this Court that he is totally

and permanently disabled within the terms of the LTD Plan.

98.     Accordingly, Plaintiff is entitled to have Pfizer pay the full cost of his dental

coverage,  for as long as Plaintiff remains totally and permanently disabled.

99.   Further, upon information and belief, the Pfizer Dental Plan provides additional

benefits, for which Mr. Teasley may be qualified as a result of his disability.

### PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
### CONTINUED LIFE INSURANCE COVERAGE

100.   Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number

"1" through "99," as if fully set forth herein.

101.   With regard to Life Insurance coverage, the Pfizer Pflex Plan Summary Plan

Description (SPD) Booklet states that:

> *If you are under age 65 at the time of your disability, Pfizer will*
> *continue your coverage, once you are no longer receiving benefits*
> *under the Pfizer Short-Term Disability Policy (STD), at the lesser of:*
>
> - *the level that was in effect when you became disabled, or*
> - *two times your annual pay, up to a maximum of $400,000.*

102.   The Pfizer Pflex Plan Summary Plan Description (SPD) Booklet also states that:

> *If you have five or more years of Creditable Service at the time*
> *your disability begins, you may continue your life insurance in*
> *excess of any Pfizer-provided coverage, if:*
>
> - *Met Life finds you are disabled,*
> - *you have had life insurance coverage greater than*
>   *two times your pay for at least three years before*
>   *STD benefits end under the Pfizer STD Policy, and*
> - *you pay the quarterly premium in advance. ...*
>
> *When you reach age 65, your life insurance coverage provided by*
> *Pfizer is reduced to 65 percent of the amount that would have been*
> *in effect if you were not disabled.  When you reach age 70, your*
> *coverage is reduced to the amount that would have been in effect*
> *had you retired at age 65 and been subject to the life insurance*
> *reduction scheduled for retirees.*

103.    Plaintiff was born on October 8, 1957. He was therefore, 41 years old on May 14, 1999 (the date he became disabled).

104.    As such, Mr. Teasley was under the age of 65 on the date he became disabled.

105.    Plaintiff was hired to work at Pfizer on April 25, 1983.

106.    Plaintiff's last day worked as a result of the onset of his total disability was May 14, 1999.

107.    Accordingly, Mr. Teasley has accumulated more than five (5) years of "Creditable Service."

108.    As CIGNA erroneously denied Plaintiff's claim for LTD benefits, Met Life never evaluated Mr. Teasley's claim for continuing Life Insurance coverage, and Mr. Teasley never had the opportunity to pay the quarterly premium in advance.

109.    Further, upon information and belief, Plaintiff maintained Life Insurance coverage greater than two (2) times his pay for at least three (3) years before STD benefits ended under the Pfizer STD Policy.

110.    Accordingly, Plaintiff would have been entitled to continued Life Insurance coverage according to the provisions of the Pfizer Pflex Plan, had INA, Met Life and the other fiduciaries of the LTD Plan properly dispensed with their fiduciary duties.

111.    Further, upon information and belief, the Pfizer Life Insurance Plan provides additional benefits, for which Mr. Teasley may be qualified as a result of his disability.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a.      That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on or about May 14, 1999, and that he continues to be disabled within the terms of the LTD Plan;

b.      That, after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff for his disabilities in accordance with the terms of the LTD Plan, retroactive to May 14, 1999;

c.      That, after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff in accordance with the terms of the Pfizer Medical Plan, retroactive to May 14, 1999;

d.      That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff in accordance with the terms of the Pfizer Dental Plan, retroactive to May 14, 1999;

e.      That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to continue Plaintiff's Life Insurance coverage in accordance with the Pflex Plan;

f.      That the Court award Plaintiff his attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

g.     That the Court grant such other necessary, proper and equitable relief, including

interest, costs and disbursements, as to which Plaintiff may be entitled.

Dated: December 16,  2005
          Ronkonkoma, New York

                                        Binder & Binder, P.C.

                        By:     _Harry J. Binder_____

                                        Harry J. Binder (HJB 5450)
                                        Attorneys for Plaintiff
                                        2805 Veterans Memorial Highway
                                        Suite 20
                                        Ronkonkoma, New York 11779
                                        Telephone:     (631) 648-4700
                                        Facsimile:     (631) 670-2569